## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

---

Mariama Moore,                                     No. 23-cv-3723 (KMM/TNL)

        Plaintiff,

v.

Hamline University; Hamline University
Residential Life; Deans of Students; Dean                  **ORDER**
of Student Employees, Sydney De Lambo;
Patti Kensten (Dean); Carlos Seed (Vice
President); David Everett; and Yolanda
Hansen (Director of Residential Life);

        Defendants.

---

Plaintiff Mariama Moore is on the District of Minnesota's list of restricted filers, which prevents her from filing new cases in this District unless she is represented by counsel or receives prior written authorization from a judicial officer. *Moore v. Minnesota*, No. 23-cv-1613 (PJS/DJF), 2023 WL 3790762, at *2 (D. Minn. June 2, 2023). The Clerk of Court received the Complaint from Ms. Moore in this case on November 29, 2023, along with Moore's motions to proceed in forma pauperis and to be removed from the restricted filer list. On December 5, 2023, Chief Judge Patrick J. Schiltz authorized the opening of a new civil case but denied Ms. Moore's request to be removed from the restricted filer list. United States Magistrate Judge Tony N. Leung granted her IFP application and instructed the Clerk of Court to seek waiver of service from the Defendants under Rule 4(d) of the Federal Rules of Civil Procedure.

In her Complaint, Ms. Moore alleges that Hamline University and several University officials are liable under Title IX[1] and on other grounds because they have failed to respond appropriately to her complaints regarding the behavior of other students in her dormitory and elsewhere on campus. Defendants waived service of the Complaint and timely filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, that motion is granted and this matter is dismissed.

## I.   The Complaint

Mariama Moore enrolled as a first-year transfer student at Hamline University and moved into Schilling Dorm Hall on August 24, 2023. Compl ¶, Doc. No. 1. Moore alleges she has the right to bring a suit under Title IX for discrimination on the basis of sex and to seek an injunction to stop discriminatory conduct. Compl. ¶ 1. She alleges that she has been affected and harmed by "private nuisance, hostile learning environment, traditional sex-gender based harassment, sexual harassment, racial harassment, and stalking," as well as "sexual bullying, bullying, and mobbing" while she has been a student at Hamline. Compl. ¶ 3. According to Ms. Moore, a Hispanic male named Trey O., who lived next to her in the dorm, "started to follow, bother and harass Ms. Moore on multiple occasions [and she] reported this incident to the Dean[] of Students Ms. Patti [Kersten]." Compl. ¶ 4.

---

[1] In part, Title IX provides, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

She reported another incident with another student that occurred right around the time she moved into the dorm. Compl. ¶ 4. The other student, a white female named Paige L., was pacing back and forth in the hallway in front of her dorm room and slamming her dorm room. Compl. ¶ 5. Paige's pacing continued out the back entrance of Schilling Hall, which caused a disturbance and private nuisance. Compl. ¶ 5. Paige was also "loitering around Ms. Moore['s] dorm room door and . . . having conversations with her friends in front of Ms. Moore['s] door room door. . . ." Compl. ¶ 6. Ms. Moore eventually complained to the Dean of Students that this was causing a "private nuisance." Compl. ¶¶ 5, 6.

Ms. Moore further alleges that Paige followed her on other occasions when she left her room and knocked on Moore's door after she reported Paige to the Dean of Students. Compl. ¶ 9. Paige also "verbally assaulted Ms. Moore in front of another Residence Assistant," causing Moore to feel intimidated. Compl. ¶ 9. Paige yanked open Moore's dorm room door and started yelling at Moore until the RA told her to return to her room. Compl. ¶ 10. Paige allegedly entered Moore's room and "played around on Ms. Moore[e's] personal computer and put [the] computer in indigo [mode]" after Moore made reports about her conduct to the Dean of Students. Compl. ¶ 10; *see also* Doc. 9 at 4 (describing how Paige locked Moore's computer while Moore was taking out the trash). Ms. Moore attached a copy of a St. Paul Police Department Incident Report, which includes a narrative description of the events that she made to police that is comparable to those described in the body of her complaint. Compl. at 17.

Including Paige and Trey, Moore identifies ten students on her floor that "have all been mobbing and gang stalking Ms. Moore and causing a Private Nuisance." Compl. ¶ 11.

Moore sent an email asking the other students not to slam their doors, but they continued to do so. Compl. ¶ 11. These students have allegedly stalked Ms. Moore based on her sex. Compl. ¶ 16. These students also allegedly threw noodles in front of Ms. Moore's dorm room door and RA did nothing about it. Compl. ¶ 14; *see also* Doc. 9 at 4 (describing noodle incident). The other students have made fun of and bullied Ms. Moore about the condition of her teeth. Compl. ¶ 15.

Ms. Moore alleges that an RA, Valentine H., has treated her differently than other students. Compl. ¶ 17. RA Valentine has allegedly falsely accused Moore of making too much noise and of having used marijuana in her dorm room. Compl. ¶ 17.

Moore claims that this conduct is "a deliberate attempt to force Ms. Moore out of the classroom and the dorm rooms[] by general harassment; emotional abuse/terror, and humiliation (Ganged)." Compl. ¶ 14. She "has asked Hamline University for a no contact policy – and she has reported the incidents to Most of … the Residence Life Workers in the Office which has not helped enforce any of the school's rules, or policy or code of conduct[.]" Compl. ¶ 14. Moore alleges that Hamline University and Hamline University Residential Office have breached a contract with her and have been negligent and intentionally inflicted emotional distress. Compl. ¶ 19. Ms. Moore also references defamation and invasion of privacy. Compl. ¶ 19.

Moore alleges that after she made complaints and reports about the foregoing to Hamline University administrators, she had a formal meeting with Title IX personnel, Ms. Patti, Carlos Sneed and David Everett. Compl. ¶ 24. Moore asserts that the Title IX personnel did not follow any of the university's policies and code of conduct. Compl. ¶ 24.

4

She alleges that she "feel[s] some sort of retaliation and [that she has] faced retaliation harassment" based on their response to the complaints she raised. Compl. ¶ 24. Further, she asserts: "I feel like they do not want to help me out because of my sex and some sort of sexual harassment because I am a Black African Female and I spoke with two Black Faculty Members that work in the Deans of Students that refuse to help and move the student." Compl. ¶ 24. She asserts that "they try to tell me to move dorm rooms where the harassment would still continue and after I made the complaints and reports I experience and encounter more harassment[.]" Compl. ¶ 24.

In a "Title IX Statement" attached to the Complaint, Ms. Moore explains that she does not believe that Dean Patti Kersten "engaged with the[] students" who had been harassing Moore as Kersten claimed because the other students continued engaging in similar behaviors. Title IX Statement ¶ 2; *see also* Doc. 9 at 3 (stating that Kersten did not tell Moore what she did in response to complaints about Paige and refused to move Paige away from her). According to a memorandum that Plaintiff filed, Ms. Kersten appears to have told her that the University's investigation was conducted and that no evidence was found to support Moore's allegations. Doc. 9 at 8 (stating that she refused a follow-up meeting with David Everett "because Patti Kersten had already stated that they pretty much conduct an investigation with no evidence"). Moore also alleges that other students have used racial slurs around her. Title IX Statement ¶ 5. Moore asserts that the actions of other students have prevented her from attending courses and caused her grades to suffer. Title IX Statement ¶ 8. She was denied a spot on a cheerleading team and has allegedly been excluded from the University hiring her for student employment. Title IX Statement ¶ 8.

She states that other students are "always loud inside of the library and their faculty members are always engaging in a hostile environment" even though her payment of tuition should entitle her to use the inside of the library on equal footing with everyone else. Title IX Statement ¶ 13.

Ms. Moore references several potential federal and state claims in her pleading, and because she is proceeding *pro se*, the Court construes her Complaint liberally. She has alleged several possible violations of Title IX, including (1) discrimination on the basis of sex, (2) sexual harassment, (3) quid pro quo sexual harassment, and (4) retaliation. In addition, Ms. Moore refers throughout her Complaint to discrimination on the basis of race and Title VI of the Civil Rights Act of 1964. 42 U.S.C. § 2000d. In addition to these federal claims, Ms. Moore references state law causes of action for breach of contract, negligence, invasion of privacy, defamation, private nuisance, and stalking or harassment in violation of Minn. Stat. § 609.748.

## II.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard does not require the inclusion of "detailed factual allegations" in a pleading, but the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In applying this standard, the Court must assume the facts in the complaint to be true and take all

reasonable inferences from those facts in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986); *see Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019). But the Court need not accept as true any wholly conclusory allegations or legal conclusions that the plaintiff draws from the facts pled. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

## III. Federal Claims

### A. Title IX

Under Title IX of the Education Amendments of 1972, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A person may bring a claim under Title IX for money damages based on intentional sex discrimination by educational institutions. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005); *see also Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345, 359 (8th Cir. 2020) ("Title IX is understood to bar the imposition of university discipline where sex is a motivating factor in the decision to discipline.") (cleaned up).

#### *Student-on-Student Harassment*

Primarily, Ms. Moore's allegations indicate that she believes Defendants are liable for their responses (or lack thereof) to her complaints about being harassed by other students. An educational institution "can only be liable for student-on-student harassment if it was '(1) deliberately indifferent (2) to known acts of discrimination (3) which occur

under its control.'" *Wolfe v. Fayetteville, Ark Sch. Dist.*, 648 F.3d 860, 864 (8th Cir. 2011) (quoting *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 782 (8th Cir. 2001)).

Defendants argue that Ms. Moore's claims regarding the University's alleged response to her complaints about harassment by other students should be dismissed because Moore fails to adequately allege that she was targeted by other students because of her sex. The Court agrees. The closest the Complaint comes to alleging that another student harassed her based on her sex were her allegations concerning the male student occupying the dorm room next to her, Trey. Ms. Moore asserts that he sexually harassed her, but her Complaint fails to provide any factual detail regarding his alleged misconduct. Instead, she provides only conclusory allegations that are insufficient to plausibly allege that she was discriminated against on the basis of her sex. Of the other factual allegations (as opposed to her conclusory assertions of harassment and discrimination), none describe any conduct that related to Ms. Moore's sex. The allegations that other students made fun of the condition of her teeth, loitered in front of her dorm room door, knocked on her door, threw noodles by her door, were noisy in the library, and were loud every morning at about half past midnight have nothing to do with her sex. Nor do her allegations that she was unable to secure a student work placement or a place on the cheerleading team, without more, implicate any sex-based discrimination. For these reasons, the Court finds that Ms. Moore has failed to state a claim under Title IX regarding student-on-student harassment.

### Quid Pro Quo Harassment

Ms. Moore refers to quid pro quo harassment in her Complaint. "Quid pro quo harassment under Title IX arises when the receipt of academic benefits is conditioned on

acquiescence to sexual advances." *Lam v. Curators of the Univ. of Missouri at Kansas City Dental Sch.*, 122 F.3d 654, 657 (8th Cir. 1997). Defendants move to dismiss this claim, arguing that the Complaint lacks any factual allegations to support it. Again, the Court agrees. There are no allegations suggesting that any Defendant conditioned Ms. Moore's receipt of any academic benefit on acquiescence to sexual advances. The motion to dismiss is granted with respect to this claim.

### Sex Discrimination

Ms. Moore alleges that Defendants discriminated against her on the basis of her sex. To state a claim for sex discrimination under Title IX, Ms. Moore must adequately allege that Hamline University excluded her from an educational program or activity, denied her the benefits of an educational program or activity "on the basis of sex—that is, because [s]he is a [female]." *See Doe v. Univ. of Ark. – Fayetteville*, 974 F.3d 858, 864 (8th Cir. 2020).

The Court finds that the Complaint fails to state a claim for sex discrimination under Title IX for similar reasons that it finds her pleading inadequate with respect to the student-to-student and quid pro quo harassment allegations. Ms. Moore offers nothing more than conclusory allegations of harassing or discriminatory conduct that are insufficient to state a claim. In the context of her sex discrimination claim, it is noteworthy that "[s]he does not point to a single instance where an identified male, under similar circumstances," was treated differently than she was. *Du Bois v. Bd. of Regents of Univ. of Minn.*, 987 F.3d 1199,

1205 (8th Cir. 2021). Accordingly, the motion to dismiss is granted with respect to this claim.[2]

### *Retaliation*

Ms. Moore references retaliation by Defendants in several places in her Complaint, which the Court liberally construes as a Title IX retaliation claim."'[W]hen a funding recipient retaliates against a person *because* [s]he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX.'" *Does 1-2 v. Regents of the Univ. of Minnesota*, 999 F.3d 571, 579 (8th Cir. 2021) (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005). "To plead prima facie retaliation claims, [plaintiffs] must allege they participated in activity protected by Title IX, and the University took adverse action against them because of their participation in that activity." *Id.* (citing *Du Bois v. Bd. of Regents of Univ. of Minn.*, 987 F.3d 1199, 1203 (8th Cir. 2021)).

Here, the Court finds that Ms. Moore has failed to adequately allege a claim of retaliation by Defendants. Liberally construed, her Complaint alleges facts suggesting that she raised her concerns about the way other students were treating her with Hamline administrators and personnel. And although she is dissatisfied with the University's response to those complaints, she offers nothing other than conclusory allegations of retaliation with respect to this aspect of her Title IX claim. She does not allege any facts

---

[2] The Court need not reach and offers no opinion regarding Defendants' additional arguments that the Complaint fails to sufficiently allege severe, pervasive, or objectively unreasonable harassment to state a claim under Title IX and that the Complaint fails to allege that the University was deliberately indifferent to Ms. Moore's complaints about the treatment she experienced.

that would support a reasonable inference that the University took some adverse action against her because she made a protected complaint regarding sexual harassment.

### Individual Defendants

Defendants argue that the Title IX claims should be dismissed with respect to the individual Hamline employees that Plaintiff has named in this case because the Complaint fails to allege that any of these individuals personally receives federal funds, and Title IX does not authorize suits against individual school officials. Defendants' argument is well taken.

"Title IX reaches institutions and programs that receive federal funds, . . . but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barstable Sch. Comm.*, 555 U.S. 246, 257 (2009). The Eighth Circuit has recently explained that "because Title IX only prohibits discrimination by federal grant recipients, a supervisory school official may not be sued in his individual capacity, directly under Title IX . . . based upon a violation of Title IX." *KD v. Douglas Cnty. Sch. Dist. No. 001*, 1 F.4th 591, 599 n.5 (8th Cir. 2021) (quoting *Cox v. Sugg*, 484 F.3d 1062, 1066 (8th Cir. 2007)); *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 610–11 (8th Cir. 1999) ("[W]e conclude that Title IX will not support an action against McDougall in her individual capacity."). Based on this authority, district courts frequently dismiss Title IX claims against individual school officials. *E.g.*, *Doe v. St. Louis Pub. Schs.*, No. 4:19-cv-03080-MTS, 2021 WL 4318167, at *6 (E.D. Mo. Sept. 23, 2021) (dismissing Title IX claims against individual defendants who were not federal grant recipients); *Braden v.*

11

*Mountain Home Sch. Dist.*, 903 F. Supp. 2d 729, 738 (W.D. Ark. 2012) ("No remedy exists against school officials in their individual capacities under Title IX:").

Accordingly, even if Plaintiff's Title IX claims were not subject to dismissal for all the other reasons stated in this Order, those claims are subject to dismissal against all of the individual Defendants.

### Conclusion

For these reasons, the Court concludes that Ms. Moore fails to state a claim for relief under Title IX. Those claims will be dismissed with prejudice.

### B.  Title VI

As discussed, Ms. Moore's Complaint references Title VI of the Civil Rights Act of 1964 and makes repeated assertions of discrimination on the basis of race. Title VI provides that "[n]o person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. A plaintiff bringing a Title VI claim must plead facts showing that "race, color, or national origin was the motive for the discriminatory conduct." *Thompson ex rel. Buckhanon v. Bd. of Special Sch. Dist. No. 1 (Minneapolis)*, 144 F.3d 574, 581 (8th Cir. 1998). A plaintiff can plead a Title VI discrimination claim based on disparate treatment by alleging she was "treated differently from others similarly situated." *Does 1-2 v. Regents of the Univ. of Minn.*, 999 F.3d 571, 580 (8th Cir. 2021) (citing *Rowles*, 983 F.3d at 355). A plaintiff may also assert a Title VI claim based on defendants' failure to adequately respond to third parties' racially motivated misconduct if she alleges that the defendants were

"(1) deliberately indifferent, (2) to known acts of discrimination, (3) which occurred under [their] control." *K.R. ex rel. Proctor v. Duluth Pub. Sch. Acad.*, 591 F. Supp. 3d 418, 428 (D. Minn. 2022) (quoting *Shrum*, 249 F.3d at 782).

### Individual Defendants

Defendants argue that Ms. Moore's claims against the individual Hamline employees named as Defendants should be dismissed because Title VI does not provide for individual liability. Again, the Court agrees and finds that Moore's Title VI claims against the individual Defendants are subject to dismissal. *See Barnes v. Gorman*, 536 U.S. 181, 185 (2002) (explaining that Title IX and Title VI are interpreted consistently); *Price ex rel. Price v. La. Dept. of Educ.*, 329 F. App'x 559, 561 (5th Cir. 2009) (per curiam) (finding that district court properly dismissed Title VI claims against individual officials); *Kelley v. Capella Univ.*, No. 18-cv-1149 (DWF/DTS), 2018 WL 5258799, at *3 (D. Minn. Sept. 28, 2018) (same), *R&R adopted*, 2018 WL 5258063 (D. Minn. Oct. 22, 2018).

### Intentional Discrimination

Defendants argue that Ms. Moore's Title VI claims otherwise fail because she has failed to allege conduct directed toward her because of her race. The Court finds that the Complaint fails to adequately allege a Title VI claim based on either a disparate-treatment theory or a theory that Defendants failed to adequately respond to known acts of racial discrimination.

In her Complaint, Ms. Moore makes numerous references to discrimination on the basis of race, but for the most part she offers only labels and conclusions, not facts. The facts that she alleges are that she is a Black, African woman. She also alleges that other

school officials with whom she interacted are white, that Trey is Hispanic, and that other students who allegedly treated her poorly, like Paige, are white. She alleges that she overheard certain "slurs" and that she heard students "slurring the [N-word] around." Title IX Statement ¶ 5. She also alleges that she heard students yell "fuck Joe" on various occasions. *Id.* And the Court has described above the other factual allegations concerning the behavior of other students about which Ms. Moore has complained, including loitering, making noise near her door and in the library, throwing noodles by her door, etc.

With respect to a disparate-treatment theory of recovery, there are no well-pled factual allegations in the Complaint asserting that Ms. Moore was treated differently from similarly situated students who were not part of her protected class. *See Does 1-2 v. Regents of the Univ. of Minn.*, 999 F.3d 571, 580 (8th Cir. 2021). The Complaint fails to state a plausible disparate treatment claim under Title VI.

As for a theory that Defendants failed to take appropriate remedial action in response to her complaints about her treatment at the hands of other students, the Court finds these allegations inadequate as well. Though she refers to slurs, including abhorrent racial epithets that have no place in modern society, Ms. Moore does not plainly allege that anyone directed a racial slur or epithet at her. Nor does she assert that she ever relayed a complaint about racial comments by students to a Hamline official. In addition, Ms. Moore does not allege any facts to support a reasonable inference that the unruly and inappropriate behavior of other students in her dormitory and near her dorm room was motivated by her race. And she does not identify any adverse action or failure to take action by Hamline University or any of its officials that was motivated by race. *See Kelley*, 2018 WL 5258799,

at *4 (recommending dismissal of plaintiff's Title VI claims against the university where the complaint did not "ascribe discriminatory motives to [the school's] actions").

### Conclusion

For these reasons, the Court grants Defendants' motion to dismiss Moore's Title VI claims, and those claims will be dismissed with prejudice.

## IV.   State Claims

The basis for subject matter jurisdiction in this case is that it presents a federal question under 28 U.S.C. § 1331. Ms. Moore's state law claims for breach of contract, negligence, invasion of privacy, defamation, private nuisance, and stalking or harassment in violation of Minn. Stat. § 609.748 do not arise under federal law, so they are not within the Court's federal-question jurisdiction. Rather, the Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) because they are related to Moore's Title IX and Title VI claims. However, the Court has found that Ms. Moore failed to state any actionable claim under Title IX or Title VI.

When a district court dismisses "all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction" over a related state law claim.[3] 28 U.S.C. § 1367(c)(3). The decision of whether to decline jurisdiction under these circumstances is discretionary. *Johnson v. City of Shorewood, Minn.*, 360 F.3d 810, 819 (8th Cir. 2004). The Eighth Circuit has "stress[ed] the need to exercise judicial restraint and avoid state law issues wherever possible." *Gregoire v. Class*, 236 F.3d 413, 420 (8th

---

[3] There is no suggestion here that the court has subject-matter jurisdiction over this case under the diversity statute. 28 U.S.C. § 1332.

Cir. 2000). "The factors a court should consider in determining whether to exercise jurisdiction over pendent state law claims are judicial economy, convenience, fairness, and comity." *Wilson v. Miller*, 821 F.3d 963, 970–71 (8th Cir. 2016) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "The Supreme Court has noted that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Johnson*, 360 F.3d at 819 (quoting *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7).

Judicial economy weighs against retaining supplemental jurisdiction over the state claims in this case. By declining jurisdiction, the Court avoids expending its resources evaluating the sufficiency of Ms. Moore's pleading of those claims and weighing in on whether state law imposes a duty on any of the defendants or would support certain of Ms. Moore's claims under the circumstances alleged.[4] Comity also points in favor of dismissal of the state law claims. Even though federal courts are equipped to resolve matters of state law, Minnesota courts should have the opportunity to rule on issues of purely state law when possible. *See Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749

---

[4] Under Minnesota law, private nuisance claims are "limited to real property interests," *Anderson v. Minn. Dep't Nat. Res.*, 693 N.W.2d 181, 192 (Minn. 2005), and as Defendants point out in their memorandum of law in support of the motion to dismiss, while some courts have rejected the idea that college students have a possessory interest in their dorm rooms or dorm facilities to assert a private nuisance claim, that issue is an open question in Minnesota. Defs.' Mem. at 20 (explaining that Minnesota courts have not decided the issue and citing *Koleci v. Sposito*, No. X07HHDVC166085724S, 2018 Conn. Super. LEXIS 779, at *1 (Conn. Super. Ct. Apr. 10, 2018) for the proposition that students lack a possessory interest in land by living in a dorm room and using a college campus). It is better for this Court to decline jurisdiction rather than guess whether Minnesota's appellate courts would recognize such a possessory interest to support a private nuisance claim.

(8th Cir. 2009) ("Where, as here, resolution of the remaining claims depends solely on a determination of state law, the Court should decline to exercise jurisdiction.") (internal quotation marks omitted); *Farris v. Exotic Rubber and Plastics of Minn., Inc.*, 165 F. Supp. 2d 916, 919 (D. Minn. Mar. 12, 2001) (citing *Baggett v. First Nat'l Bank*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should be the final arbiters of state law.")).

Consideration of the fairness and convenience factors does not change this conclusion. Although the Court recognizes Ms. Moore's frustration with the pace of federal litigation, through dismissal of the federal claims and by declining to exercise supplemental jurisdiction over the state claims, this proceeding is being resolved at an early stage before either the Court or the parties have invested significant resources into the litigation. And the Court notes the Eighth Circuit has "upheld the refusal to exercise jurisdiction over a state-law claim even though the federal claims were disposed of late in the proceedings and the court had already devoted significant judicial resources to the state claim." *Willman v. Heartland Hosp. East*, 34 F.3d 605, 613 (8th Cir. 1994); *see also Gregoire v. Class*, 236 F.3d 413, 419 (8th Cir. 2000) ("If the claim giving original jurisdiction is dismissed early in the action, before any substantial preparation has gone into the dependent claims, dismissing or remanding the [state claims] upon declining supplemental jurisdiction seems fair enough.") (internal quotation marks omitted).

For these reasons, the Court declines to exercise supplemental jurisdiction over Ms. Moore's state law claims pursuant to 28 U.S.C. § 1367(c)(3) and dismisses those claims without prejudice. *St. John v. Int'l Ass'n of Machinists and Aerospace Workers*, 139

F.3d 1214, 1217 (8th Cir. 1998) ("Normally, the decision not to exercise supplemental jurisdiction results in a dismissal without prejudice.").

## V.    Moore's Remaining Motions

Ms. Moore filed three separate motions for summary judgment prior to the deadline for Defendants to answer or otherwise respond to the Complaint. Doc. Nos. 32, 35, 44. Because the Court finds that Ms. Moore's Complaint fails to state a claim upon which relief can be granted, those motions are denied. However, even if the Complaint had adequately stated a claim, the Court would deny those motions as premature. *See e.g.*, *Cobb v. Madlock*, No. 1:19-CV-61-SNLJ, 2020 WL 1557731, at *4 (E.D. Mo. Apr. 1, 2020) (denying plaintiff's motion for partial summary judgment as premature where it was filed before defendants were obligated to admit or deny allegations in the pleading); *Youngbear v. Bayens*, No. 23-CV-39-CJW-MAR, 2023 WL 9475652, at *5 (N.D. Iowa Sept. 29, 2023) ("Plaintiff's motion for summary judgment was premature, having been filed before the time elapsed for defendant to file an answer or otherwise respond to plaintiff's complaint."), *aff'd,* No. 23-3327, 2024 WL 359373 (8th Cir. Jan. 31, 2024).

Ms. Moore filed a motion asking the Court to issue a decision in this matter and asking the Court to grant her an exemption from fees charged for electronic filing. Doc. No. 72. Because the Court has ruled on the Defendants' motion to dismiss, the first aspect of this motion is moot.

With respect to the issue of PACER (Public Access to Court Electronic Records) fees, the Court notes that Ms. Moore was granted permission to file electronically in this case. Doc. No. 14. PACER users are charged fees that are used to cover the costs of

maintaining the database. *Walker v. Shafer*, No. 16-CV-5121 (JLV), 2018 WL 813420, at

*3 (D.S.D. Feb. 9, 2018).[5] Parties (including pro se plaintiffs like Ms. Moore) get one "free

look" at all documents electronically filed and served in their case, and they can use this

look to print or download each one. *Rabin v. U.S. Dep't of Health & Hum. Servs.*, No. 23-

CV-00402 (JMA/SIL), 2023 WL 5321969, at *1 (E.D.N.Y. Mar. 10, 2023); *see also*

*Electronic Public Access Fee Schedule*, U.S. Courts, https://www.uscourts.gov/services-

forms/fees/electronic-public-access-fee-schedule (last visited January 15, 2024) (listing

fees and automatic exemptions). After the "free look," PACER charges a fee, but PACER

fees are waived for any user that spends less than $30 in a fiscal quarter. *Rabin*, 2023 WL

5321969, at *1. All court opinions are free. *Id.*

A court may waive a user's PACER charges if it finds the user has "demonstrated

that an exemption is necessary in order to avoid unreasonable burdens and to promote

public access to information[.]" *Electronic Public Access Fee Schedule*, *supra*

("[E]xemptions should be granted as the exception, not the rule."); *Walker*, 2018 WL

813420, at *3. Ms. Moore has not explained why an exemption is necessary in this case.

She does not allege that he has failed to receive notice of filings, nor that she did not receive

her free access. And she has successfully filed several documents on this Court's docket,

including a response to the motion to dismiss and numerous motions of her own. These

facts indicate that she has been able to litigate this case without a waiver of PACER fees.

---

[5] *Frequently Asked Questions*, PACER, https://pacer.uscourts.gov/help/faqs/pricing#:~:
text=search%20for%20me%3F-,Yes.,charged%20for%20any%20document%20applies (last
visited Jan. 15, 2024).

*See Hunter v. Bradford*, No. 4:14-cv-00613-KGB, 2014 WL 12691604, at *3 (E.D. Ark. Dec. 10, 2014) (finding no waiver necessary when a pro se plaintiff did not allege that she lacked access to filings and had successfully submitted documents to the court); *Lindsay v. Preuss*, No. 21-cv-11006 (PAE/KHP), 2023 WL 3998056, at *7 (S.D.N.Y. Apr. 25, 2023) (finding no error with the bankruptcy court's refusal to exempt party who did not "show why the standard PACER fee exemptions were insufficient"), *R&R adopted,* 2023 WL 3996865 (S.D.N.Y. June 14, 2023). For these reasons, Ms. Moore's request is respectfully denied.

Finally, Moore filed a motion with the caption "Motion of Memorandum Law/Reports of Minnesota Judicial Standards Complaint Judicial Misconduct." Doc. No. 60. Moore repeats her assertion that the undersigned should have recused from this proceeding. The Court has previously rejected that argument in multiple Orders and will not address them again. In addition, Moore asserts that Defendants improperly delayed responding to her Complaint, which the Court has also explained is an argument that lacks merit. *See* Doc. No. 47 at 2–4 (denying motion for default judgment and explaining that defendants' deadline to plead or otherwise defend had not expired). The Court cannot discern any other request for relief in this motion. Accordingly, this motion is denied.

## ORDER

For the reasons discussed above, the Court enters the following **ORDER**:

1.      Defendants' Motion to Dismiss, Doc. No. 50, is **GRANTED**.

2.      Plaintiff's federal claims under Title IX and Title VI are **DISMISSED WITH PREJUDICE**.

3.    The Court declines to exercise jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367, and those claims are **DISMISSED WITHOUT PREJUDICE**.

4.    Plaintiff's motions for summary judgment, Doc. Nos. 32, 35, and 44, are **DENIED**.

5.    Plaintiff's remaining motions, Doc. Nos. 60 and 72, are **DENIED**.

**Let Judgment be entered accordingly**.

Date: May 1, 2024                          *s/Katherine Menendez*
                                           _____
                                           Katherine Menendez
                                           United States District Judge